# Exhibit E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, Plaintiff, | |
| vs. | |
| STUART H. SOJCHER, ESQ., FIRST AMERICAN TITLE INSURANCE COMPANY, CHESTNUT HILL PRIVATE MORTGAGE CO., INC. F/K/A CHESTNUT HILL MORTGAGE & REALTY, INC. AND SD CORPORATION Defendants. | Civil Action No. |

**COMPLAINT FOR DECLARATORY JUDGMENT AND TO RESCIND INSURANCE POLICY**

Plaintiff Continental Casualty Company ("Continental"), for its Complaint for Declaratory Judgment and to Rescind Insurance Policy, alleges on knowledge, information and belief:

**NATURE OF ACTION**

1. Continental files this action to obtain a judicial determination and declaration as to the parties' rights and obligations under Lawyers' Professional Liability Policy No. LAW-268022438 (the "Policy"), issued by Continental to Stuart H. Sojcher ("Sojcher"), for the policy period August 1, 2005 to August 1, 2006. A true and correct copy of the Policy, without the application, is attached hereto as Exhibit A.

2. An actual and justiciable controversy has arisen and now exists relating to the parties' rights, duties, and obligations under the Policy. In particular, Continental seeks a declaratory judgment that there is neither coverage for, nor a duty to defend, Sojcher in connection with claims asserted against him in two lawsuits, respectively captioned: *First*

*American Title Insurance Co. v. Stuart H. Sojcher*, Case No. 06-4284, in the Superior Court for Suffolk County, Massachusetts (the "First American Lawsuit") and *Chestnut Hill Private Mortgage Co.. v. Sojcher*, Case No. 06-4825, in the Superior Court for Suffolk County, Massachusetts (the "Chestnut Hill Lawsuit"). The Verified Complaint and Request for Injunctive Relief filed in the First American Lawsuit (the "First American Complaint"), without exhibits, is attached hereto as Exhibit B. The Complaint and Demand for Jury Trial filed in the Chestnut Hill Lawsuit (the "Chestnut Hill Complaint"), without exhibits, is attached hereto as Exhibit C. In addition, Continental seeks a declaratory judgment that it is entitled to rescind the Policy because of material misrepresentations in the application for the Policy submitted by Sojcher.

## PARTIES

3. Plaintiff Continental is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in Chicago, Illinois. Continental legally transacts insurance business in the Commonwealth of Massachusetts and within the geographical jurisdiction of the United States District Court for the District of Massachusetts.

4. Defendant Stuart H. Sojcher ("Sojcher") is a citizen of the Commonwealth of Massachusetts and, upon information and belief, currently resides in Winchester, Massachusetts.

5. Defendant First American Title Insurance Company ("First American") is a California corporation, with its principal place of business at Prudential Center, 101 Huntington Avenue, Boston, Massachusetts. First American is joined as a defendant in this action because it seeks judgment against Sojcher, for which coverage has been requested under the Policy.

6. Defendant Chestnut Hill Private Mortgage Co., Inc. f/k/a Chestnut Hill Mortgage & Realty, Inc. ("Chestnut Hill) is a corporation organized under the laws of Massachusetts, with

its principal place of business at 21A Highland Circle, Suite 200, Needham, Massachusetts. Chestnut Hill is joined as a defendant in this action because it seeks judgment against Sojcher, for which coverage has been requested under the Policy.

7. Defendant SD Corporation is a corporation organized under the laws of Massachusetts, with its principal place of business at 64 Newton Street, Brookline, Massachusetts. SD Corporation is joined as a defendant in this action because it seeks judgment against Sojcher, for which coverage has been requested under the Policy.

## JURISDICTION AND VENUE

8. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rules of Civil Procedure Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

9. This action is currently ripe for adjudication.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the controversy is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

### Sojcher and His Law Practice

12. Prior to his recent suspension and disbarment, Sojcher was a Boston, Massachusetts attorney, whose practice included real estate law.

13. During the relevant time period, Sojcher was also a title insurance issuing agent of First American.

14. As a former real estate attorney and title insurance issuing agent, Sojcher has at all relevant times been familiar with Massachusetts real estate law, including but not limited to the local standards of care regarding title searches for encumbrances on properties prior to closing, ensuring that prior, existing mortgages and encumbrances are paid off or otherwise satisfied and discharged at closing, and ensuring that mortgages are recorded promptly following closing.

**The First American Lawsuit**

15. In or around 1999, First American and Sojcher entered into an Issuing Agency Contract (the "Agency Agreement").

16. Pursuant to this Agency Agreement, Sojcher was entitled to issue First American title insurance policies.

17. If First American suffered losses under claims made under title insurance polices issued by Sojcher, the Agency Agreement allowed First American to seek indemnification for its losses from Sojcher, subject to certain limitations.

18. Upon information and belief, several claims were made under First American title policies issued by Sojcher, which prompted First American to file the First American Lawsuit.

19. First American asserts in its Complaint that, in connection with several real estate transactions closed during the 2003 to 2006 time period, Sojcher: (i) failed to remit title policies and premiums to First American; (ii) issued title polices on condominiums after alleged expiration of phasing rights adversely affecting title; (iii) failed to obtain necessary mortgage discharges and releases on mortgaged properties; and (iv) failed to properly pay off existing liens, as required by the First American title policies that Sojcher issued.

20. In its Complaint, First American has asserted the following causes of action against Sojcher: (i) breach of contract; (ii) failure to pay amounts due under a promissory note; (iii) gross negligence; and (iv) injunctive relief.

**The Chestnut Hill Action**

21. In connection with multiple transactions, Sojcher acted as counsel to lenders Chestnut Hill, SD Corporation, and the lenders' principal, Stuart Levey.

22. According to the Chestnut Hill Complaint, in the 2003 to 2006 time period, Sojcher introduced Levey and his affiliate companies to lending opportunities, issued title insurance policies in connection with the resulting transactions, and then closed the loans on behalf of Levey's affiliates.

23. On or around November 17, 2006, after Sojcher allegedly made several significant errors with regard to these closings, Chesnut Hill and SD Corporation filed the Chestnut Hill Lawsuit.

24. In the Chestnut Hill Lawsuit, Plaintiffs allege that, in connection with four separate loan transactions, Sojcher's negligence caused them damages, including by: (i) failing to ensure that the stated collateral was what Sojcher represented it to be; (ii) failing to obtain and deliver title policies paid for at closing; (iii) failing to obtain payoff letters and discharges of senior mortgages; (iv) failing to provide and record loan documentation that reflected the existence of the loans; and (v) failing to advise plaintiffs of legal risks associated with cross-collateralizing loans with non-borrowers.

25. The Chestnut Hill Complaint also alleges that Sojcher improperly served as counsel for the borrowers in the same transactions in which he represented lenders Chestnut Hill

or SD Corporation, without obtaining the lenders' consent to the simultaneous representation, to the lenders' disadvantage.

26. Plaintiffs in the Chestnut Hill Lawsuit allege that Sojcher committed negligence, breached the duty of loyalty by simultaneously representing the borrowers and the lenders, and committed unfair or deceptive trade practices within the meaning of M.G.L. c. 93A.

27. The Chestnut Hill Complaint seeks damages, interest, costs, and attorneys' fees.

**<u>The Policy and the Application</u>**

28. Continental issued the Policy, which is a claims-made-and-reported policy, to Stuart H. Sojcher for the policy period August 1, 2005 to August 1, 2006.

29. The Policy provides for a $3,000,000 per-claim and maximum aggregate limit of liability, inclusive of claims expenses, for all damages from covered claims under the Policy. *See* Ex. A, Policy, Declarations, Item 3. Any coverage provided by the Policy is subject to satisfaction of a $2,500 aggregate deductible, which is inclusive of claims expenses. *See id.*, Declarations, Item 4.

30. With respect to the scope of coverage available, the Insuring Agreement of the Policy provides as follows:

> I. INSURING AGREEMENT
>
> A. Coverage
>
> The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:
>
> 1. the **Insured** did not give notice to a prior insurer of such **claim** or a **related claim**;

2. the **Insured** did not give notice to a **prior insurer** of any such act or omission or **related act or omission;**
3. there is no other policy whether primary, contributory, excess, contingent, or otherwise, which provides insurance to any **Insured** for the **claim** based on or arising out of an act or omission in the performance of **legal services** by such **Insured** or by any person for whom the **Insured** is legally liable while affiliated with a firm other than the **Named Insured.**

B. Defense

The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

If the **Company** agrees to defend a **claim** but reserves its rights to deny coverage on grounds which create a conflict of interest between an **Insured** and the **Company**, and the **Insured** does not waive the conflict then the **Insured** may select independent counsel. Such counsel shall have at least five (5) years of experience in the defense of similar claims, and have in place error and omissions insurance. The **Insured** and independence counsel shall provide full information, documentation and cooperation with respect to the defense, investigation, and settlement of any **Claim.** The **Company** shall be liable only for reasonable and necessary **claim expenses** at rates customarily paid by the **Company** for the defense of similar **claims** in the area where the **claim** is being defended.

*Id.*, I.A. and B. Words in bold type are defined terms in the Policy.

31. The Policy contains a cooperation clause entitled "Assistance and cooperation of the **Insured**." This section provides:

1. The **Insured** *shall cooperate with the* **Company** and, upon the **Company**'s request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **claim.**

2. The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.
3. The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the consent of the **Company**.

*Id.*, § V.E. (italic emphasis added).

32. Section V.L. of the Policy, "Entire Contract" provides, in relevant part:

By acceptance of this Policy, the **Insured** agrees that:

1. all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all the **Insureds**;
2. this Policy is issued in reliance upon the **Insured's** representations; and
3. this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**.

No oral or written misrepresentations made in the negotiation of this Policy of insurance by the **Insured** or in his or her behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss. Notwithstanding the foregoing, this policy will be null and void only with respect to those **Insureds** who participate in, or who have knowledge of, or who should have knowledge of, the misrepresentation of any material matter in the negotiation of the Policy or application.

*Id.*, § V.L. (italic emphasis added).

33. Sojcher responded in the negative to Questions 3(a) and 3(b) on the "Renewal Application for MBA Lawyers Professional Liability Insurance Claims Made Basis," which he signed on behalf of his firm on June 7, 2005 (the "Application"). A true and correct copy of the Application is attached hereto as Exhibit D.

34. Question 3(a) and 3(b) on the Application asked:

a) Is the firm, or any attorney affiliated with the firm, aware of any acts, omissions, or circumstance which a reasonable person would expect may give rise to a professional liability claim in the future against the firm, any predecessor firm, or any current or

former attorney of the firm while affiliated with the firm, which has not been reported to [Continental]?

b) Has any attorney been refused admission to practice, disbarred, suspended, formally reprimanded or been the subject of any disciplinary inquiry, action, complaint or proceeding for any reason other than non-payment of dues during the expiring policy period?

35. The Application includes the following warranty language directly above Sojcher's signature:

> Applicant affirms that the responses herein shall attach to and become an integral part of the application for insurance.
>
> * * *
>
> Applicant warrants . . . that after full investigation and inquiry, the information contained herein and in any supplemental applications or forms required hereby is true, accurate and complete and that no material facts have been suppressed or misstated.
>
> * * *
>
> Applicant further warrants . . . that after investigation and inquiry (1) there are no known claims by reason of an act or omission or related acts or omissions in the rendering of legal services by the Applicant . . . prior to the effective date of this policy; and (2) [the] applicant . . . . [is] not aware of any act or omission or related acts or omissions in the rendering of legal services which a reasonable person would view as likely to give rise to a claim in the future.
>
> * * *
>
> Further, Applicant . . . acknowledge[s] that:
>
> * * *
>
> Applicant's failure to report to its current insurance company during the current policy term any claim made against it . . . and any act, omission or circumstance which may give rise to a claim in the future against it . . . may create a lack of coverage.

## <u>Sojcher's Failure to Cooperate with Continental</u>

### Bar Complaints Filed Against Sojcher

36. Sojcher warranted to Continental in the June 7, 2005 Application that he had not been the subject of any disciplinary inquiries or bar complaints in the expiring policy period.

37. On July 31, 2006, Sojcher disclosed to Continental that there were at least four matters pending against him with the Massachusetts Board of Bar Overseers.

38. Continental has repeatedly requested that Sojcher provide it with information relating to the bar complaints filed against him, including copies of the original disciplinary inquiries, the chronology of relevant dates in the proceedings, and the status and substance of each.

39. Sojcher was temporarily suspended from the practice of law by the Supreme Judicial Court for Suffolk County, Massachusetts as of November 16, 2006.

40. On June 28, 2007, Justice Spina of the Supreme Judicial Court for Suffolk County entered a Judgment of Disbarment against Sojcher, effective immediately.

41. Sojcher's repeated failure to produce the requested information, which he is contractually bound to provide, creates a reasonable inference that Sojcher made misrepresentations in the Application.

42. Upon information and belief, one or more of the bar complaints filed against Sojcher pre-dated the Application.

**Prior Knowledge of Acts, Omissions, or Circumstances That Might Reasonably Lead to A Claim**

43. Continental is providing Sojcher with independent defense counsel of his choice in connection with the First American and Chestnut Hill Lawsuits, subject to a reservation of Continental's rights.

44. The First American and Chestnut Hill Lawsuits make allegations against Sojcher of gross violations of the standard of care in connection with multiple real estate transactions that closed before the date the Application was submitted.

45. Sojcher was disbarred based on findings of fraudulent conduct in connection with similar real estate transactions, though the closings at issue in the publicly available suspension and disbarment opinions post-dated the Application.

46. In connection with the First American and Chestnut Hill Lawsuits, Continental has repeatedly requested from Sojcher: (1) a narrative regarding the events and circumstances that led to each of the claims; (2) an interview with Continental regarding the claims made against him; and (3) access to all of the files in his or his counsel's possession relating to the transactions in question.

47. Specifically, Continental has requested information and documents from Sojcher dating back for over a year in correspondence dated July 19, 2006, July 26, 2006, October 5, 2006, November 2, 2006, January 9, 2007, July 2, 2007, July 18, 2007, August 1, 2007 and August 2, 2007.

48. Sojcher and his independent counsel have failed to cooperate and produce the information requested by Continental.

49. Sojcher's repeated failure to produce the requested information, which he is contractually bound to provide, creates a reasonable inference that Sojcher made misrepresentations in the Application.

50. Upon information and belief, Sojcher was subjectively aware, before the Application was signed, of acts, omissions, or circumstances that a reasonable attorney would expect may give rise to a claim against him.

51. Continental has advised Sojcher that, notwithstanding any other coverage issues, there is no potential for coverage under the Policy for the claims made against him unless he cooperates with Continental.

**COUNT I**
**For Declaratory Relief that Continental is Entitled to Rescind the Policy**

52. Continental realleges and incorporates by reference herein the allegations of Paragraphs 1-51 of this Complaint.

53. As set forth above, on June 7, 2005, Sojcher checked "No" in response to Application Questions 3(a) and 3(b), which asked:

a) Is the firm, or any attorney affiliated with the firm, aware of any acts, omissions, or circumstance which a reasonable person would expect may give rise to a professional liability claim in the future against the firm, any predecessor firm, or any current or former attorney of the firm while affiliated with the firm, which has not been reported to [Continental]?

b) Has any attorney been refused admission to practice, disbarred, suspended, formally reprimanded or been the subject of any disciplinary inquiry, action, complaint or proceeding for any reason other than non-payment of dues during the expiring policy period?

54. As set forth above, the Application and the answers thereto are made a part of the Policy by Section V.L, Entire Contract.

55. For the reasons cited above, upon information and belief, Sojcher was subjectively aware, before the Application was signed, of acts, omissions, or circumstances that a reasonable attorney would expect may give rise to a claim against him.

56. For the reasons cited above, upon information and belief, Sojcher was aware, before the Application was signed, of bar complaints that had been filed or were pending against him.

57. Accordingly, by providing negative answers to these Application questions, Sojcher made misrepresentations to Continental.

58. Continental reasonably relied on the truthfulness of the answers in the Application in order to determine Continental's risk.

59. Sojcher's misrepresentations materially affected the risk and the hazard assumed by Continental.

60. Based on the foregoing, Continental seeks a judgment in this action declaring that Continental is entitled to rescind the Policy and that the Policy is void and therefore does not

provide coverage for the claims asserted against Sojcher in the First American and Chestnut Hill Lawsuits.

61. Continental hereby tenders a refund of the premium paid for the Policy.

**COUNT II**
**For Declaratory Relief that the Policy Does Not Provide Coverage for the Chestnut Hill or First American Lawsuits**

62. Continental realleges and incorporates by reference herein the allegations of Paragraphs 1-61 of this Complaint.

63. Section V.E of the Policy states, in relevant part, "[t]he **Insured** shall cooperate with the **Company**." Ex. A., Policy, §V.E.

64. Section I.B. of the Policy states, in relevant part, "The **Insured** and independent counsel shall provide full information, documentation and cooperation with respect to the defense, investigation, and settlement of any **Claim**." *Id.*, §I.B.

65. Notwithstanding this clear obligation, Sojcher and his independent counsel have refused to assist and cooperate with Continental in the investigation of the claims made and disciplinary actions filed against him.

66. Sojcher's and his independent counsel's refusal to assist Continental in its investigation constitutes a failure to cooperate under the Policy – a breach – thus precluding coverage for the Chestnut Hill and First American Lawsuits.

67. Continental has been prejudiced by this failure to cooperate.

68. Based on the foregoing, Continental seeks a judgment in this action declaring that the Policy provides no coverage for the Chestnut Hill and First American Lawsuits, and that Continental has no duty to defend or indemnify Sojcher in connection with these Lawsuits.

**COUNT III**
**For Declaratory Judgment that Coverage is Also Limited or Barred on the Basis of Other Policy Provisions**

69. Continental realleges and incorporates by reference herein the allegations of Paragraphs 1-68 of this Complaint.

70. Coverage is not available, in whole or in part, for the claims made in the First American and Chestnut Hill Lawsuits on the basis of other provisions in the Policy.

71. Coverage is not available, in whole or in part, on the grounds that a portion of the relief sought in the First American and Chestnut Hill Lawsuits does not constitute covered "damages." Under the Policy, "**damages**" is defined to include: "judgments, awards and settlements, provided any settlement is negotiated with the assistance and approval of the **Company**." *Id.*, § III.E. However, "**damages**" under Section III.E specifically does not include:

1. legal fees, costs and expenses paid or incurred or charged by the **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;
2. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. § 1961, et seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. § 1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;
3. injunctive or declaratory relief;
4. matters deemed insurable; [or]
5. amounts for which the **Insured** is not financially liable or that are without legal recourse to the **Insured**.

*Id.*, §III.E.

72. Coverage is not available, in whole or in part, on the grounds that some or all of the allegations made against Sojcher in the First American and Chestnut Hill Lawsuits do not arise out of an act or omission in the performance of "legal services." The Policy defines "legal services" as follows:

1. those services performed by and **Insured** for others as a lawyer, title agent, or arbitrator, mediator, or other neutral fact finder, or as a notary public. Any title agency or company, on whose behalf the **Insured** acts as a title agent or designated issuing attorney, is not an **Insured** under this Policy;
2. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services;
3. those services as an author or publisher of legal research papers or legal materials or the presenter of legal seminars or materials, but only where compensation attributable per publication, presentation or seminar is less than $10,000.00;
4. those services performed by an **Insured** for others in the capacity as a member, director or officer of any professional legal association, including the Board of Bar Overseers, its governing board or any of its committees.

*Id.*, §III.H.

73. Coverage is not available, in whole or in part, on the basis of Policy Exclusion A, which states, in pertinent part: "This Policy does not apply to any **claim** based on or arising out of any dishonest, fraudulent, criminal, or malicious act by the **Insured** . . . ." *Id.*, §IV.A.

74. Coverage is not available, in whole or in part, on the basis of Policy Exclusion D, to the extent that "any **claim** [is] based on or aris[es] out of the **Insured's** alleged liability under any oral or written contract or agreement, unless such liability would have attached to the **Insured** in the absence of such agreement." *Id.*, §IV.D.

75. Coverage is not available, in whole or in part, because Sojcher has not provided prompt and proper notice of the First American and Chestnut Hill claims pursuant to Policy Condition A, which states:

A. Notice of **claims** and potential **claims**

1. The **Insured**, as a condition precedent to the obligations of the **Company**, under this Policy, shall as soon as reasonably possible give written notice to the **Company** during the **policy period**:
   a. of any **claim** made against the **Insured**;
   b. of the **Insured's** receipt of any notice, advice or threat, whether written or verbal, that any person or organization



395169

intends to hold the **Insured** responsible for any alleged breach of duty.

The **Company** agrees that the **Insured** may have up to, but not to exceed, 60 days after the Policy expiration to report a **claim** made against the **Insured** during the **policy period** if the reporting of such **claim** is as soon as reasonably possible.

2. If during the **policy period** the **Insured** shall become aware of any act or omission that may reasonably be expected to be the basis of a **claim** against the **Insured** and gives written notice to the **Company** of such act or omission and the reasons for anticipating a **claim**, with full particulars, including but not limited to:

a. the specific act or omission;
b. the dates and persons involved;
c. the identity of anticipated or possible claimants;
d. the circumstances by which the **Insured** first became aware of the possible **claim**,

then any such **claim** that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made at the time such written notice was given to the **Company**.

76. In connection with the First American and Chestnut Hill claims, Continental has reserved its rights generally and on the bases referenced above. Continental continues to reserve its rights to assert any such additional limitations or exclusions as appropriate. Moreover, based on the foregoing, Continental seeks a judgment in this action declaring that the Policy provides no coverage for some or all of the claims made the Chestnut Hill and First American Lawsuits, and that Continental has no duty to defend or indemnify Sojcher in connection with these Lawsuits.

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) enter judgment declaring that Continental is entitled to rescind the Policy and that the Policy is void *ab initio*;

(B) in the alternative, enter judgment declaring that the Policy does not provide coverage for the Chestnut Hill and First American Lawsuits and that Plaintiff has no obligation under the Policy to defend or indemnify Sojcher;

(C) enter judgment declaring that Continental may withdraw the defense that it provided to Sojcher in the First American and Chestnut Hill Lawsuits;

(D) award Continental its costs incurred herein; and

(E) award Continental all other relief to which it may be entitled.

Respectfully submitted,

Dated: August 24, 2007

By:____________________
*Counsel for Plaintiff Continental Casualty Company*

Regina Roman
roman@srbc.com
William L. Boesch
boesch@srbc.com
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114-4737
(617) 227-3030 (phone)
(617) 523-4001 (fax)

Of Counsel
Richard A. Simpson
Stacey L. McGraw
Kelly V. Overman
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
(202) 662-2000 (phone)
(202) 662-2190 (fax)