# Exhibit F

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 06-4284G

FIRST AMERICAN TITLE INSURANCE COMPANY,
Plaintiff,

v.

STUART H. SOJCHER,
Defendant.

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
2006 NOV -8 PM 4:08
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

**FIRST AMENDED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF**

## I. Summary of Action

This is an action by First American Title Insurance Company ("First American") for breach of contract, failure to pay the amount due under a promissory note, and gross negligence against Defendant Stuart H. Sojcher ("Sojcher"), an attorney and title insurance agent for First American in Massachusetts, arising from his conduct in issuing policies of title insurance ("title policies") in various real estate transactions, failing to remit such policies and related premiums paid to Sojcher to First American, issuing title policies on condominiums after alleged expiration of condominium phasing rights adversely affecting title, failing to obtain necessary mortgage discharges and/or partial releases on mortgaged properties, and failing to properly pay off pre-existing liens required by title policies issued by Sojcher.

## II. Parties

1. Plaintiff, First American, is a California corporation duly authorized and registered to do business in the Commonwealth of Massachusetts with a principal place of business at Prudential Center, 101 Huntington Avenue, Boston, Suffolk County, Massachusetts.

2. Defendant, Sojcher, is an individual who, at all relevant times, was licensed to practice law in the Commonwealth of Massachusetts with a principal place of business at 229 Berkeley Street, Boston, Massachusetts. Sojcher resides at 15 Stowell Road, Winchester, Massachusetts.

## III. Factual Background

3. At all times relevant hereto, First American has been in the business of issuing policies of title insurance in connection with the sale and/or financing of real estate in the Commonwealth of Massachusetts and elsewhere.

4. At all times relevant hereto, Sojcher has been an attorney licensed to practice law in the Commonwealth of Massachusetts.

5. In August 1999, Sojcher submitted an Application for Approved Attorney or Issuing Agent to First American seeking, *inter alia*, appointment to issue title insurance policies on behalf of First American. A copy of the Application is attached hereto as **Exhibit A**. First American executed an Issuing Agent Contract ("Agency Contract") pursuant to which First American appointed Sojcher as one of its agents for the limited purpose of issuing First American policies of title insurance, subject to the conditions and limitations set forth in the Agency Contract. A copy of the Agency Contract in effect at the time that Sojcher applied and was issued an Agency Contract is attached hereto as **Exhibit B**.

6. Paragraph III.A. of the Agency Contract provides that the agent shall:

> [r]eceive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of First American.

7. Paragraph III.D. of the Agency Contract provides that the agent shall:

> [s]end to First American a copy of each policy and endorsement issued by Agent within thirty (30) days of date of issuance, along with the appropriate premium.

8. Paragraph III.F. of the Agency Agreements provides, in pertinent part, that agent shall:

> [k]eep safely in accounts separate from Agents personal or general operating accounts all funds received by Agent from any source in connection with transaction(s) in which First American's title insurance is involved. Agent must disburse said funds only for the purposes for which same were entrusted, and reconcile all such accounts not less frequently than monthly. First American shall have the right [to] of examine, audit and approve Agent's accounting procedures.

9. Paragraph VI of the Agency Agreements provides, in pertinent part:

> Agent shall be liable to and agrees to indemnify and to hold harmless First American for all attorneys fees, court costs, expenses and loss or aggregate of losses, resulting from:
>
> A. Gross Negligence
>
> B. Fraud by Agent or member of the firm.
>
> C. Any improper closing or attempted closing by the Agent, including but not limited to (1) loss or misapplication of client funds, documents or other value entrusted to Agent in any custodial or fiduciary capacity resulting in loss to First American and/or (2) failure to disburse properly or close in accordance with escrow and/or closing instructions, and/or (3) misappropriation of escrow or closing funds by Agent, its officers or employees.

10. Paragraph VII of the Agency Agreement provides, in pertinent part:

> Agent agrees to provide access for examination to First American upon request by First American to all files, books, escrow/closing or client fund accounts and other records of Agent relating to the business carried on hereunder and to the closing of transactions committed to the issuance of First American policies of insurance. Such right of examination may also be exercised after termination of this contract.

**655 Corporation, 653-659 East Second Street, South Boston, Massachusetts**

11. On or about May 14, 2003, Sojcher acted as a settlement agent in connection with refinancing provided by General Bank to 655 Corporation ("655 Corp."). General Bank provided a loan of $5,600,000.00, later amended to $5,348,179.20 secured by a first mortgage on the property owned by 655 Corp. General Bank's mortgage loan replaced a prior mortgage loan, dated March 13, 2002, from Wolfpen Financial LLC. General Bank's loan was subsequently assigned to Cathay Bank. At or about the time of the loan closing with General Bank, 655 Corp. also granted a second mortgage to LBM Financial LLC in the principal amount of $1,200,000.00.

12. Sojcher issued to General Bank a First American title policy, known as Policy Number 101650229-MAL, dated May 14, 2003, in the amount of $5,600,000.00 and may have issued an additional title policy to the holder of the second mortgage on the property with respect to its loan in the principal amount of $1,200,000.00.

13. Pursuant to his duties as the issuing agent for First American, Sojcher was required to cause the discharge of two recorded mortgages and security agreements on the property of 655 Corp securing two promissory notes in the principal amounts of $100,000.00 and $600,000.00, modified by a related Forbearance Agreement and assigned to New England Phoenix Co., Inc. ("NEPCO").

14. Sojcher had represented the prior lender, Wolfpen Financial LLC, in connection with its loan dated March 13, 2002 to 655 Corp and had similarly failed to record discharges or releases of the NEPCO mortgages. On or about January 27, 2006, a Discharge of Mortgage and Security Agreement dated February 11, 2002 and a Partial Release of Mortgage and Security Agreement dated February 11, 2002 were filed with the Suffolk Division of the Land Court. The Discharge purports to discharge the $100,000.00 Mortgage in consideration of full satisfaction of the $100,000.00 Note and the Partial Release purports to partially release the 655 Corp. property from the $600,000 Mortgage. The validity of the Discharge and Partial Release are being challenged by NEPCO in litigation commenced in the Land Court and subsequently transferred to the Unites States Bankruptcy Court in connection with the bankruptcy filing by 655 Corp.

15. Cathay Bank has made a claim under the Title Policy Number 101650229-MAL, dated May 14, 2003 in light of the challenged Discharge and Partial Release.

**111 West 8th Street, Unit T, South Boston, Massachusetts**

16. On or about May 30, 2003, Sojcher represented Boston Federal Savings Bank ("Boston Federal") in connection with a first mortgage loan in the amount of $548,000.00 to finance the purchase of a condominium known as Unit T at 11 West 8th Street, South Boston, Massachusetts ("Unit T") by Richard Sharp ("Sharp"). Boston Federal's loan required security in the form of a first mortgage on Unit T. TD BankNorth is the present assignee of Boston Federal's loan rights and obligations.

17. Sojcher prepared a HUD Settlement Statement dated May 30, 2003 in connection with the closing conducted by him. A copy of the HUD Statement for the financing of Sharp's purchase of Unit T is attached hereto as **Exhibit C**.

18. The HUD Statement reflects that Sojcher conducted or obtained an "abstract or title search" and a "[t]itle examination." The property was registered land, and accordingly, all liens and encumbrances were readily available to Sojcher.

19. The HUD Statement also reflects that title insurance premiums were collected at closing to insure the lender, Boston Federal, in the amount of $548,000 and to insure the owner, Sharp, in the amount of $685,000.00. Sojcher issued to Boston Federal a title policy known as Policy Number 101826495 MAL, and issued to Sharp a title policy known as Policy Number 101183967 MAEO.

20. Sojcher failed to deliver the title policies or the premiums to First American.

21. Sojcher failed to pay off and/or obtain discharges for several liens and encumbrances, most of which were not noted on the HUD Statement, as follows:

a) Payoff to Haymarket Corp. Bank $1,200,000.00;

b) Massachusetts Bay Transportation Authority $1,900,000.00;

c) Massachusetts Bay Transportation Authority $6,000,000.00;

d) Ralph Maher ("Maher") $375,000.00;

e) Maher $50,000.00;

f) Barbara Buckley $200,000.00;

g) SD Corp. $252,000.00;

h) SD Corp. $50,000.00;

i) Stuart Family Irrevocable Trust $575,000.00;

j) Execution to Environmental Impact $21,103.13.

22. Of the above encumbrances, the HUD Statement identifies only the following:

d) Payoff to Maher $7,500;

e) Payoff to Barbara Buckley $10,000; and

g) Payoff to Stuart Family Irrevocable Trust $580,000.

23. First American has conducted a preliminary investigation and believes that some of the encumbrances were paid off, but the requisite discharges were not obtained or recorded, and other encumbrances were not paid and have not been discharged.

**<u>111 West 8th Street, Unit E, South Boston, Massachusetts ("Unit E")</u>**

24. On or about June 6, 2003, Sojcher represented Greenpoint Mortgage ("Greenpoint") as the lender and Sharp as the buyer in connection with a purchase money mortgage loan in the amount of $188,000.00 to Sharp to acquire certain real property known as Unit E located at 111 West 8th Street, South Boston, Massachusetts ("Unit E"). Repayment of the loan was secured by a first mortgage on Unit E.

25. Sojcher prepared a HUD Statement dated June 6, 2003 in connection with the loan closing conducted by him. A copy of the HUD Statement for Unit E is attached hereto as **Exhibit D**.

26. The HUD Statement reflects that Sojcher conducted or obtained an "abstract or title search" and a "[t]itle examination." The property was registered land, and accordingly, all liens and encumbrances were on the Schedule of Encumbrances contained in the Transfer of Unit Ownership. A copy of the Transfer of Memorandum Unit Ownership And Schedule Of Encumbrances On The Unit Described In This Memorandum is attached hereto as **Exhibit E**.

27. The HUD Statement reflects that title insurance premiums were collected at closing to insure the lender in the amount of $188,000.00 and to insure the purchaser in the amount of $235,000.

28. Sojcher failed to issue a policy or remit the premiums to First American regarding Unit E.

29. Sojcher failed to pay off and/or obtain discharges for several liens and encumbrances, some of which were noted on the HUD Settlement Statement as follows:

a) Payoff to Maher $25,000.00; and

b) Payoff to Barbara Buckley $10,000.00

30. Sojcher issued payment to Maher for $2,500.00, and on information and belief, failed to issue any payment to Barbara Buckley.

31. Sojcher also failed to pay off and/or obtain discharges for liens and encumbrances which were not noted on the HUD Statement, but which were noted on the Memoranda of Encumbrances On The Land Described In This Certificate (Exhibit E) including the following:

a) Mortgage to the Massachusetts Bay Transportation Authority Retirement Trust Fund ("MBTA Ret. Fund") in the amount of $1,900,000 dated July 29, 1998, and related encumbrances, (assigned to Invictus Holdings, LLC);

b) Mortgage to the MBTA Ret. Fund in the amount of $6,000,000.00 and related encumbrances dated July 2, 1999 (assigned to Invictus Holdings, LLC);

c) Two mortgages to Maher, one for $375,000.00 dated August 9. 1999, and one for $50,000.00 dated July 23, 1999, one of which was identified on the HUD Statement; and

d) Mortgage to Neal Marshall Brown ("Brown") dated August 23, 2000, in the principal amount of $700,000.

32. Brown was not issued any payment and no discharge of any kind was issued as to Unit E. Brown has commenced foreclosure proceedings.

33. On information and belief, the MBTA has issued a partial discharge of its mortgages as to Unit E but Sojcher failed to obtain or record them.

**SOS Realty LLC - 5168-5174, 5178 and 5178R Washington Street, and Lots 337 and 338 Cheriton Road, West Roxbury, Massachusetts**

34. On or about December 22, 2003, Sojcher represented LBM Financial, LLC ("LBM") in connection with a purchase money mortgage loan in the amount of $3,630,0000.00 to SOS Realty, LLC to acquire certain real property. Repayment of the loan was secured by a mortgage on the purchased property and a second mortgage on certain vacant land known as 401 West First Street, South Boston, Massachusetts ("401 West First St. Property") owned by Geneva LLC, ("Geneva"), a Massachusetts limited liability company. LBM also held a separate first mortgage on the 401 West First St. Property for the full amount of its purchase price of $3,250,000.00.

35. Sojcher issued a title policy for $3,630,000.00 to LBM dated December 23, 2004 [sic 2003], insuring LBM's mortgage on the 401 West First St. Property.

36. Sojcher caused LBM's mortgage to be recorded in the recorded land section of the Suffolk County Registry of Deeds. However, Sojcher failed to cause LBM's mortgage to be recorded in the registered land section of the registry of deeds, thereby causing LBM to have no mortgage of record on the 401 West first St. Property.

37. Additional mortgages have since further encumbered the 401 West First St. Property.

38. As a result thereof, LBM has made a claim under its title policy on or about June 15, 2006 to pay the outstanding balance owed on the LBM mortgage, which the claimant asserts exceeds one million dollars.

**1740 Liberty Street, Unit D, Braintree, Massachusetts**

39. On or about April 6, 2005, Sojcher represented Chestnut Hill Mortgage & Realty, Inc. ("Chestnut Hill") and FKB Realty, LLC in connection with a mortgage loan to FKB Realty,

LLC in the amount of $1,575,000.00, secured in part by a first mortgage on certain property known as Unit D, 1740 Liberty Street, Braintree, Massachusetts.

40. Sojcher prepared an Authorization For Disbursements in connection with the loan closing conducted by him. A copy of the Authorization For Disbursements is attached hereto as **Exhibit F**. It misidentifies the lender, Chestnut Hill, as BLR Realty Trust.

41. The Authorization For Disbursements reflects that Sojcher obtained Title Rundowns, a Title Policy and prepared and recorded discharges.

42. Sojcher failed to obtain discharges for encumbrances of record as follows:

a) Phoenix Financial Corp. $106,000.00;

b) SD Corporation $110,000.00;

c) Mortgage, Security Agreement and Assignment of Rents and Leases from BLJ Realty, LLC to SD Corporation in the amount of $225,000.00; and

d) Mortgage, Security Agreement and Assignment of Rents and Leases from BLJ Realty, LLC to Stuart Family Irrevocable Trust II in the amount of $400,000.00.

43. In addition, the mortgaged property, Unit D, derives from the creation of a condominium known as Liberty Ridge Condominium by Master Deed dated February 3, 1997. The right to add Unit D to the Condominium allegedly expired before the loan was made by Chestnut Hill thereby adversely affecting title to the mortgaged property.

**1734 Liberty Street, Unit G, Liberty Ridge Condominium, Braintree, MA**

44. On or about September 30, 2003, Sojcher closed a loan in the principal amount of $400,000.00 from John F. Phillips, Trustee of the Stuart Family Irrevocable Trust II to BLJ Realty, LLC secured by mortgage on property identified as 1734 Liberty Ridge Condominium, Unit G.

45. On information and belief, Sojcher collected a title policy premium but failed to issue a title policy.

46. The lender asserts that Sojcher also failed to record a discharge of a pre-existing mortgage from SD Corp. that was required to be discharged at closing by the claimant lender.

**1734 Liberty Street, Unit G, Braintree, Massachusetts**

47. On or about April 6, 2005, Sojcher represented Chestnut Hill, lender, and FKB Realty, LLC in connection with the same mortgage loan set forth above to FKB Realty, LLC in the amount of $1,575,000.00 secured in part by a first mortgage on certain property known as Unit G, 1740 Liberty Street, Braintree, Massachusetts.

48. On information and belief, Sojcher prepared a HUD Statement in connection with the loan closing conducted by him. Sojcher also prepared the Authorization For Disbursements applicable to both Units D and G.

49. Sojcher failed to obtain discharges for two prior liens and encumbrances as follows:

a) Mortgage, Security Agreement and Assignment of Rents and Leases from BLJ Realty, LLC to SD Corporation in the amount of $225,000.00; and

b) Mortgage, Security Agreement and Assignment of Rents and Leases from BLJ Realty, LLC to Stuart Family Irrevocable Trust II in the amount of $400,000.00.

50. In addition, the mortgaged property, Unit G, derives from the creation of a condominium known as Liberty Ridge Condominium by Master Deed dated February 3, 1997. The right to add Unit D to the Condominium allegedly expired before the loan was made by Chestnut Hill, thereby adversely affecting title to the mortgaged property.

**1742 Liberty Street, Braintree, Massachusetts**

51. On or about January 9, 2006, Sojcher represented Wilmington Finance, a division of AIG Federal Savings Bank, and Jeffrey Paul Fantasia ("Fantasia") in connection with a purchase money mortgage loan in the amount of $600,000 to Fantasia to finance his purchase of property located at 1742 Liberty Street, Braintree, Massachusetts from Georgette Clements.

52. Sojcher prepared a HUD Statement in connection with the closing conducted by him. A copy of the HUD Statement for the 1742 Liberty Street property is attached hereto as **Exhibit G**.

53. The HUD Statement reflects that that Sojcher had a title examination performed showing encumbrances on title and collected insurance premiums at closing to insure the lender in the amount of $600,000.00 and $731,000.00 to insure the purchaser.

54. Sojcher failed to remit to First American the premiums he collected at closing and failed to pay off and/or obtain discharges for several liens and encumbrances of which the following were noted on the HUD Settlement Statement:

a) Phoenix Financial Corp. $113,104.05;

b) Chestnut Hill Mortgage & Realty, Inc. $40,000.00;

c) 2003-2004 Tax Title to City of Braintree $22,000.00;

d) Pay 1st Quarter to City of Braintree 989.62 and

e) Pay-off Litton Financial $474,000.00.

55. Other mortgages of record that were not noted on the HUD Statement and which were not discharged were as follows:

a) Mortgage to LBM Financial, LLC $160,000.00;

b) Mortgage to Phoenix Financial Corp. $50,000.00;

c) Tax Taking dated 9/23/04 $5,477.18;

d) Mortgage to New Century Mortgage Corporation $402,500.00;

e) Mortgage to SD Corporation $110,000.00;

f) Mortgage to Chestnut Hill Mortgage & Realty, Inc. $1,575,000.00; and

g) Mortgage to Phoenix Financial Corp. $110,000.00

**Unit F-Liberty Ridge, 1736 Liberty Street, Braintree, Massachusetts**

56. On or about January 23, 2006, Sojcher represented Premium Capital Funding and Fantasia in connection with a purchase money loan mortgage loan in the amount of $769,600.00 to Fantasia to finance his purchase of the property known as Unit F at 1376 Liberty Street, Braintree, Massachusetts from Georgette Clements. Option One Mortgage Corporation is the present assignee of the rights and obligations of Premium Capital Funding.

57. Sojcher prepared a HUD Settlement Statement in connection with the loan transaction conducted by him. A copy of the HUD Statement for Unit F is attached hereto as **Exhibit H**.

58. The HUD Statement reflects that Sojcher had an abstract or title search performed and collected title insurance premiums at closing to insure the lender in the amount of $769,600 and to insure the purchaser in the amount of $962,000.00.

59. Sojcher failed to remit to First American the premiums he collected at closing and failed to pay off and/or obtain discharges for two mortgages identified on the HUD Settlement Statement as follows:

a) New Century Mortgage $572,435.27; and

b) Chestnut Hill Mortgage & Realty $150,000.00.

60. Sojcher failed to note other mortgages of record on the HUD Statement and failed to cause their discharge. The undischarged mortgages are as follows:

a) MBD Realty Trust $150,000;

b) LBM Financial, LLC $120,000;

c) MBD Realty Trust $150,000;

d) Charles J. Houseman, Trustee of Pine Banks Nominee Trust $225,000.00;

e) LBM Financial $160,000;

f) New Century Mortgage Corporation $550,000;

g) Chestnut Hill Mortgage & Realty, Inc. $1,575,000.00; and

h) SD Corporation $110,000.

**39 Upham Street, Unit 1, Malden, Massachusetts**

61. On or about April 27, 2006, Sojcher represented Quicken Loans, Inc. in connection with a first mortgage loan in the amount of $221,900.00 to Natalie C. Brown and Marco Deary to purchase a condominium known as Unit 1, 39 Upham Street, Malden, Massachusetts from Gerarda Hoex and Anca van Assendelft, Managers of 39 Upham Street, LLC.

62. Sojcher prepared a HUD Statement in connection with the loan closing conducted by him. A copy of the HUD Statement for Unit 1 is attached hereto as **Exhibit I**.

63. Sojcher issued a check dated April 27, 2006 in the amount of $259,031.74 to 39 Upham Street LLC as funds due the sellers. The check was returned for 'insufficient funds.'

64. As a result of the foregoing, on June 2, 2006, First American was required to pay $259,031.74 to 39 Upham Street, LLC, $3,000.00 to counsel for attorney's fees and taxes, plus interest of $244.34. First American also incurred substantial attorneys fees as a result thereof.

65. First American made demand upon Sojcher to pay the full amount due First American. Sojcher acknowledged his obligation and provided First American with a promissory note in the principal amount of $275,000.00, partially secured by a mortgage on certain property. A copy of the promissory note from Sojcher to First American dated May 30, 2006 is attached hereto as **Exhibit J**.

66. Sojcher provided a $100,000.00 check as payment of the promissory note, however, the check was returned for insufficient funds. Sojcher failed to make all payments due under the promissory note and mortgage to First American. Sojcher owes a principal balance due of $275,000.00, plus interest, costs, and continuing attorneys fees.

67. First American has incurred substantial monetary damages, costs and attorneys fees to date and anticipates incurring substantial damages, costs and attorneys fees with respect to the pending claims set forth in this Amended Complaint.

## IV. Counts

### COUNT I (Breach of Contract v. Sojcher)

68. First American realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 67 of the Amended Complaint as if fully set forth herein.

69. First American entered into a binding and valid contract, i.e., the Agency Agreement, with Sojcher.

70. At all times relevant hereto, Sojcher as in charge of, and responsible for the actions of, the Law Office of Stuart H. Sojcher.

71. Sojcher defaulted on his obligations and otherwise failed to fulfill his contractual obligations to First American.

72. Demand was made upon Sojcher for payment of the claims paid and to be paid by First American.

73. Notwithstanding such demands, Sojcher has failed and refused to pay First American the amounts outstanding or otherwise resolve the claims or file the appropriate discharges.

74. By his conduct, Sojcher has breached the Agency Agreement with First American.

75. As a result, First American is entitled to recover its damages, including costs and attorneys fees.

**COUNT II (Breach of Promissory Note Obligations)**

76. First American realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 75 of the Amended Complaint as if fully set forth herein.

77. Sojcher is obligated to make payment to First American of the full amount due under his promissory note to First American and is further obligated to reimburse First American for its attorneys fees and costs.

78. Sojcher has breached his payment obligations to First American under the promissory note.

79. Demand was made upon Sojcher to pay all sums due under the promissory note.

80. Notwithstanding such demand, Sojcher has failed and refused to pay First American the amount due under the promissory note.

81. As a result, First American is entitled to recover its damages, including costs and attorneys fees.

**COUNT III (Gross Negligence v. Sojcher)**

82. First American realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 81 of the Amended Complaint as if fully set forth herein.

83. Defendant Sojcher has a duty to safeguard, account for, and properly disburse funds used in real estate and finance transactions involving First American policies of title insurance.

84. Defendant Sojcher has a duty to follow recognized title insurance underwriting practices.

85. Defendant Sojcher has a duty to disburse funds only for the purposes for which same were entrusted.

86. Defendant Sojcher breached his duties under the Agency Agreement and was grossly negligent in, *inter alia*:

(a) failing to safeguard clients funds and to keep separate personal or general operating accounts;

(b) failing to disburse funds only for the purposes for which same were entrusted;

(c) failing to properly receive and process applications for policies of title insurance;

(d) failing to properly issue title insurance policies;

(e) failing to obtain and record discharges of pre-existing mortgages;

(f) failing to provide to First American notice of all policies of title insurance issued by them;

(g) failing to remit premiums to First American;

(h) failing to maintain adequate funds in their accounts to satisfy the obligations of insureds to various title insurance policies;

(i) failing to maintain adequate funds in their accounts to satisfy the title premiums due and owing to First American; and

(j) failing to indemnify First American for its attorneys fees, costs, expenses, and losses.

87. As a result of Defendant Sojcher's conduct, First American is entitled to recover its damages, including costs and attorneys fees.

**COUNT IV (Injunctive Relief v. Sojcher)**

88. First American realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 87 of the Amended Complaint as if fully set forth herein.

89. First American has a great likelihood of success on the merits of its claims against the Defendant Sojcher.

90. First American will suffer immediate and irreparable harm if injunctive relief is not granted restraining and enjoining Defendant, Sojcher, from (a) dissipating, transferring, selling, giving, refinancing, encumbering, hypothecating, pledging or in any other way conveying his interest, legal, beneficial, or otherwise, in any real or personal property owned or controlled by him directly and/or indirectly; and (b) dissipating, conveying, transferring, selling, giving, refinancing, encumbering, hypothecating, pledging or in any other way disposing of any of his assets including, without limitation, any bank accounts, goods, credits, or effects.

91. First American will be irreparably harmed if injunctive relief is not granted enjoining and restraining Defendant, Sojcher, from destroying any records relating, directly or indirectly, to the bank accounts or the underlying real estate transactions.

92. The harm that First American will incur if injunctive relief is not granted substantially outweighs the harm, if any, that Defendant, Sojcher, will incur if the relief is granted.

93. As a result thereof, First American requests that the Court enter the following injunctive relief:

a. Sojcher his agents, servants, employees, successors, assigns, attorneys, and all persons acting or purporting to act on their behalves, and all persons having actual notice of any order issued hereunder, are enjoined and restrained from (a) dissipating, transferring, selling, giving, refinancing, encumbering, hypothecating, pledging or in any other way conveying his interest, legal, beneficial, or otherwise, in any real or personal property owned or controlled by him directly and/or indirectly; and (b) dissipating, conveying, transferring, selling, giving, refinancing, encumbering, hypothecating, pledging or in any other way disposing of any of his assets including, without limitation, any bank accounts, goods, credits, or effects.

b. Sojcher, and all persons acting or purporting to act on his behalf, are enjoined and restrained from, directly or indirectly, dissipating, transferring, selling, giving, conveying, secreting, pledging, concealing, encumbering, hypothecating, or otherwise disposing of any of their assets, including, but not limited to, stocks, bonds, securities, IRA's, life insurance policies, cash, real estate, motor vehicles, equipment, maritime vessels, or interests in any privately or publicly held corporations, partnerships, trusts, or entities, other than for normal incidental living expenses not to exceed $1,000.00 in the aggregate per month per person (said sum shall not include ordinary mortgage payments, car payments, or utility bills).

WHEREFORE, Plaintiff First American demands that the Court enter the following orders:

1. That pursuant to Count I of the Amended Complaint, Judgment enter in favor of Plaintiff for its damages, plus costs, interest, and attorneys' fees;

2. That pursuant to Count II of the Amended Complaint, Judgment enter in favor of Plaintiff for its damages, plus costs, interest, and attorneys' fees;

3. That pursuant to Count III of the Amended Complaint, Judgment enter in favor of Plaintiff for its damages, plus costs, interest, and attorneys' fees;

4. That pursuant to Counts IV, the Court issue a preliminary injunction in the form requested above; and

5. That this Court grant such further relief as it may deem just and proper.

Respectfully submitted,
FIRST AMERICAN TITLE INSURANCE COMPANY,
By its attorneys,

Richard B. Michaud, BB0 No 3450000
James B. Fox, Esquire, BBO No. 176520
Bernkopf Goodman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts 02110
Telephone: (617) 790-3000
Facsimile: (617) 790-3300

Dated: November 8, 2006
410416 v1/3640/9608

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 11/8/06.