# Exhibit G

16

2005 00144859
Bk: 38364 Pg: 161 Doc: MTG
Page: 1 of 16 10/31/2005 09:12 AM

**MORTGAGE, SECURITY AGREEMENT**
**AND ASSIGNMENT OF LEASES AND RENTS**

THIS MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND LEASES is granted this 14th day of July 2005, to:

Chestnut Hill Mortgage & Realty, Inc.
("the Mortgagee"),
with a principal address of
21A Highland Circle, Suite 200
Needham, MA 02494

by

Bernard J. Laverty, Jr. and Patricia M. Laverty
with a principal address of
130 Pokanoket Lane
Marshfield, MA

~ and ~

Bernard J. Laverty, Jr., as Trustee of the B&S Realty Trust u/d/t dated September 23, 2003 and recorded with the Suffolk County Registry of Deeds in Book 32861, Page 334
with a principal address of
153 Rowe Street
Roslindale, MA

~ and ~

SOS Realty LLC
225A Grove Street
West Roxbury, MA

hereinafter, collectively referred to as "Mortgagor"

in consideration of the mutual covenants contained herein and benefits derived herefrom, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor agrees to the following terms and conditions.

130 Pokanoket Lane, Marshfield, MA ~and~ 153 Rowe Street, Roslindale, MA ~and~ 109 Arnold Street, Marshfield, MA ~and~ 5168-5174 Washington Street, Lots 337 & 338 Cheriton Road, 5178 & 5178R Washington Street, West Roxbury, MA ~and~ 10 Long Island Road,

Attested hereto
Francis M. Roache
Francis M. Roache
Register of Deeds

*After recording return to:*

Stuart H. Sojcher, Esq.
229 Berkeley Street
Boston, MA 02116

**ARTICLE 1 - GRANT OF MORTGAGE INTEREST**

To secure the Mortgagor's prompt, punctual and faithful payment and performance of all and each of the Mortgagor's present and future Liabilities (as defined herein) to the Mortgagee, including, without limitation, those arising under a certain Promissory Note of July 14, 2005, in the original principal amount of $700,000.00, and any extensions, renewals, substitutions, modifications or replacements thereof (hereinafter, the "Note"), the Mortgagor hereby grants, mortgages, assigns and transfers to the Mortgagee with MORTGAGE COVENANTS, the Collateral (as defined herein). The Mortgagor intends to convey and hereby does convey to the Mortgagee with MORTGAGE COVENANTS (to be included within the Collateral), the premises described on Exhibit "A" attached hereto and made a part hereof for a description of the premises. The rights of the Mortgagee hereunder are subject to the rights of prior mortgages of record (if any).

**ARTICLE 2 - GRANT OF SECURITY INTEREST AND ASSIGNMENT**

2-1. Security Interest. To secure Mortgagor's prompt, punctual and faithful payment and performance of all and each of the present and future Liabilities to Mortgagee, including, without limitation, those arising under the Note, the Mortgagor hereby grants to the Mortgagee a continuing security interest in and to, and assigns to Mortgagee, the Collateral.

2-2. Financing Statement. This Agreement is intended to take effect as a security agreement and is to be filed with the above-described Registry of Deeds or Land Registration Office in lieu of a financing statement pursuant to the laws of the states of Massachusetts and/or New Hampshire (hereinafter, the "UCC").

2-3. Assignment of Rents. As further security for Mortgagor's payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, Mortgagor hereby transfers, sets over and assigns to Mortgagee all rents, profits, revenues, royalties, bonuses, rights and proceeds under any and all leases or tenancies now existing or hereafter created of the premises or any part thereof, with the right to receive and apply the same to said indebtedness, and Mortgagee may demand, sue for and recover such payments, but shall not be required to do so; provided, however, that so long as Mortgagor is not in default hereunder, or under any of the terms of the Promissory Note, the right to receive and retain such rents and profits is reserved to the Mortgagor. In order to carry out the foregoing, Mortgagor agrees (i) to execute and deliver to Mortgagee such conditional assignments of leases and rents applicable to the Mortgaged Premises as the Mortgagee may from time to time request while this Mortgage and the debt secured hereby are outstanding, and further (ii) not to cancel, accept a surrender of, reduce the rents under, anticipate any rents under, or modify any such leases or tenancies for the duration, including any rental obligations, or consent to an assignment of subleasing thereof, in whole or in part, without Mortgagee's written consent. Nothing herein shall obligate the Mortgagee to perform the duties of the Mortgagor as landlord or lessor under any such leases or tenancies, which duties Mortgagor hereby covenants and agrees to perform.

**ARTICLE 3 - CERTAIN DEFINITIONS**

As used herein, the following terms shall have the following meanings:

3-1. Liabilities. "Liabilities" includes, without limitation, the Note and any and all other liabilities, debts and obligations now or hereafter at any time owing by the Mortgagor to the Mortgagee, each of every kind, nature and description. "Liabilities" also includes, without limitation, all interest and other amounts which may be charged to the Mortgagor and/or which may be due from the Mortgagor to the Mortgagee from time to time and all costs and expenses now or hereafter incurred or paid by the Mortgagee in respect of this and any other agreement between the Mortgagor and the Mortgagee or instrument furnished by the Mortgagor to the Mortgagee (including, without limitation, Costs of Collection, attorneys' reasonable fees and all court and litigation costs and expenses).

3-2. Costs of Collection. "Costs of Collection" includes, without limitation, all attorneys' reasonable fees, out-of-pocket expenses incurred by the Mortgagee's attorneys and all costs incurred by the Mortgagee, which costs and expenses are directly or indirectly related to or in respect of the Mortgagee's efforts to collect or enforce any of the Liabilities and/or to exercise or enforce any of the Mortgagee's rights, remedies or powers against or in respect of the Mortgagor and/or any other guarantor or person liable in respect of the Liabilities (whether or not suit is instituted in connection with such efforts).

3-3. Collateral. "Collateral" shall include all and each of the following, whether singly or collectively, whether real property, personal property or a combination thereof, whether now owned or now due or now existing, or in which the Mortgagor has an interest, or hereafter, at any time in the future, acquired, arising or to become due, or in which the Mortgagor obtains an interest, and all proceeds, products, substitutions and accessions of or to any of the following:

(a) the land with buildings and improvements whether now existing or hereafter constructed or located thereon, situated in West Roxbury, Marshfield, and Roslindale, Massachusetts or Moultonborough, New Hampshire, as more particularly described on Exhibit A annexed hereto (hereinafter, the "Mortgaged Premises");

(b) all furnaces, ranges, heaters, plumbing goods, gas and electric fixtures, screens, screen doors, mantels, shades, storm doors and windows, awnings, oil burners and tanks or other equipment, gas or electric refrigerators and refrigerating systems, ventilating and air conditioning apparatus and equipment, door bell and alarm systems, sprinkler and fire extinguishing systems, portable or sectional buildings, and all other fixtures of whatever kind or nature owned by the Mortgagor, now or in the future contained in or on the Mortgaged Premises, and any and all similar fixtures hereinafter installed in the Mortgaged Premises in any manner which renders such articles usable in connection therewith;

(c) all easements, covenants, agreements and rights which are appurtenant to or benefit the Mortgaged Premises;

(d) all machinery, equipment, furniture, inventory, building supplies and appliances, owned by the Mortgagor, used or useful in the construction, operation, maintenance, or occupation of the Mortgaged Premises or any portion or unit thereof;

(e) all leases, tenancies and occupancies, whether written or not, regarding all or any portion of the foregoing (a through d) (hereinafter, the "Leases"), all guarantees and security relating thereto, together with all income and profit arising therefrom or from any of the foregoing Subparagraphs (a) through

(d), and all payments due or to become due thereunder (hereinafter, the "Rental Payments"), including, without limitation, all rent, additional rent, damages, insurance payments, taxes, insurance proceeds, condemnation awards, or any payments with respect to options contained therein (including any purchase option);

(f) all funds held by the Mortgagee as tax or insurance escrow payments;

(g) all proceeds received from the sale, exchange, collection or other disposition of any of the foregoing Subparagraphs (a) through (f); all insurance proceeds relating to all or any portion of the foregoing Subparagraphs (a) through (f); and all awards, damages, proceeds or refunds from any state, local, federal or other takings of, and all municipal tax abatements relating to, all or any portion of the foregoing Subparagraphs (a) through (f); and

(h) all rights, remedies, representations, warranties and privileges pertaining to any of the foregoing Subparagraphs (a) through (g).

## ARTICLE 4 - REPRESENTATIONS, WARRANTIES AND COVENANTS

4-1. Insurance. The Mortgagor hereby covenants and agrees to maintain public liability insurance, flood hazard insurance, all risk insurance, builder's risk insurance, and such other insurance against such casualties or contingencies as may be required by the Mortgagee in sums and in companies satisfactory to the Mortgagee. All policies shall contain a provision requiring at least ten (10) days advance notice to the Mortgagee before any cancellation or modification. All insurance on the Collateral shall be for the benefit of and a copy of said policy shall be deposited with the Mortgagee, shall be payable to Mortgagee as its interests may appear, and shall include such endorsement in favor of the Mortgagee as the Mortgagee may reasonably specify.

4-2. Insurance, Eminent Domain. Mortgagor shall advise Mortgagee of each claim made by the Mortgagor under any policy of insurance or any proposed taking by any state, federal or local authority, which covers all or any portion of the Collateral and, at Mortgagee's option in each instance, if the Mortgagor is in default hereunder, will permit Mortgagee, to the exclusion of Mortgagor, to conduct the adjustment of each such claim. Subsequent to an Event of Default which remains uncured, Mortgagor hereby appoints Mortgagee as Mortgagor's attorney-in-fact to obtain, adjust or settle any insurance claim or taking or cancel any insurance described in this section and to endorse in favor of the Mortgagee any and all drafts and other instruments with respect to such insurance or taking. The within appointment, being coupled with an interest, is irrevocable until this Agreement is terminated by a written instrument executed by a duly authorized officer of Mortgagee. The Mortgagee shall not be liable for any loss sustained on account of any exercise pursuant to said power unless such loss is caused by the willful misconduct, actual bad faith or gross negligence of the Mortgagee. During the continuance of an Event of Default hereunder, if the Mortgagee has exercised its Power of Attorney, the Mortgagee may, at its option, make any proceeds available to the Mortgagor to repair or reconstruct the Collateral (subject to such disbursement procedures as the Mortgagee may establish) or apply any proceeds of such insurance against the Liabilities, whether or not such have matured, in accordance with the terms hereof.

4-3. Statutory Compliance. The Mortgagor shall comply with, shall not use any of the Collateral in violation of, and shall cause the Collateral to be in compliance with, each and every statute, regulation, ordinance, decision, directive, order, by-law or rule of any federal, state, municipal and other governmental authority which has or claims jurisdiction over the Mortgagor or any of the Collateral.

4-4. Title to Collateral. The Mortgagor is, and shall hereafter remain, the owner of the Collateral free and clear of all voluntary or involuntary liens, encumbrances, attachments, security interests, purchase money security interests, assignments, mortgages, charges or other liens or encumbrances of any nature whatsoever, with the exceptions of (a) the mortgage and security interest created herein, (b) liens for real estate taxes not yet due and payable, and (c) those encumbrances, if any, as described on Exhibit A attached hereto.

4-5. Condition of Collateral. The Collateral is, and shall hereafter remain, in good repair, well maintained and in good working order. Mortgagor shall not cause or permit to be suffered any waste, destruction or loss (whether or not such loss is insured against) to Collateral or any part thereof.

4-6. Taxes and Other Costs. To the extent payment is not provided for in Section 4-8 herein, the Mortgagor shall pay when due all real and personal property taxes, assessments, charges and other taxes assessed against it, and all insurance premiums relative to the Collateral. The Mortgagor agrees that the Mortgagee may, at its option, and from time to time, pay any taxes or insurance premiums, the payment of which is then due, discharge any liens or encumbrances on any of the Collateral, or take any other action that the Mortgagee may deem proper to repair, insure, maintain or preserve any of the Collateral or the Mortgagee's rights therein. The Mortgagor will pay to the Mortgagee on demand all amounts so paid or incurred by the Mortgagee.

4-7. Property of Third Parties. Except for the encumbrances listed in Paragraph 4-4 or Exhibit A as referred to herein, the Mortgagor shall not suffer or permit any item of property owned by a third party to be affixed, attached or installed on, upon or within, or be located at, the Mortgaged Premises, or any portion or unit thereof, which may be subject to any security interest, lien, encumbrance or charge which is prior or superior to the interest granted herein.

4-8. Tax and Insurance Escrow. Subject to the rights of the First Mortgagee, if applicable, in addition to other payments herein required, the Mortgagor shall, at the Mortgagee's option, pay to the Mortgagee monthly on the first of each month, or such other day of the month as may be designated by the Mortgagee during the term hereof, and for so long as the Liabilities secured by this Agreement shall remain unpaid, an amount equal to one-twelfth (1/12th) of the municipal taxes and assessments which the Mortgagee estimates will become payable on account of the Mortgaged Premises for the year next succeeding any period for which such taxes and assessments have been paid or escrowed hereunder, sufficient to enable Mortgagee to accumulate at least thirty (30) days prior to the dates upon which such municipal taxes and assessments are payable the amounts then due and payable. Further, the Mortgagor shall pay to the Mortgagee on demand the amount of any deficiency of the funds so collected when the actual amount of such taxes and assessments become known. The Mortgagee shall maintain such funds in a non-interest bearing account, which may be commingled with other funds of the Mortgagee. The Mortgagee shall apply said funds to the payment of municipal taxes and assessments, as applicable, to the extent such amounts are determined by the Mortgagee to be due and payable. In the event the Mortgagee collects such tax or insurance payments hereunder, the Mortgagor

shall deliver to the Mortgagee the bills representing any such amounts within five (5) days of the receipt thereof by the Mortgagor. Notwithstanding the provisions of this Section 4-8, upon an occurrence of an event which is, or, solely with the passage of time, would be, an Event of Default hereunder, the Mortgagee shall not be required to apply such funds as provided above, and may set off funds against the Liabilities and apply any such funds towards the Liabilities in accordance with the terms hereof.

4-9. Future Action Additional Information. The Mortgagor shall do all such things, furnish all such financial and other information, and execute all such documents from time to time hereafter as the Mortgagee may request in order to monitor the financial condition of the Mortgagor, carry into effect the provisions and intent of this Agreement and to protect, perfect and maintain the Mortgagee's interest in and to the Collateral.

4-10. Hazardous Waste. The Mortgagor shall not store (except in compliance with all laws, ordinances and regulations pertaining thereto), or dispose of any hazardous material or oil, other than those petroleum products which are used in the ordinary course of business on the Mortgaged Premises. The Mortgagor further warrants and represents that there is no hazardous material or oil related products located on the Mortgaged Premises.

4-11. Mortgage Conditions. This Mortgage, Security Agreement and Assignment of Rents and Leases is upon the STATUTORY CONDITION, upon breach of which, the Mortgagee shall have the STATUTORY POWER OF SALE.

4-12. Compliance with Leases. The Mortgagor is not in default under any terms and conditions of any Lease and shall, during the term of this Agreement, perform all of the obligations of the Mortgagor under any such Lease within the period that such performance is required.

4-13. Collection of Rents (if applicable). Mortgagor agrees not to collect or accept the payment of any Rental Payments, or other income or profit from, or on account of, any Lease or the use or occupation of the Collateral, more than thirty (30) days in advance of when such payment becomes due unless such amount is delivered to Mortgagee to be applied toward the Liabilities in accordance with Section 8-3 hereof.

4-14. Modification of Lease (if applicable). Mortgagor will not modify or consent to modification of any provision of, or cancel, terminate or accept the early cancellation or termination of, any Lease, without the prior consent of Mortgagee, which consent shall not be unreasonably withheld or delayed.

4-15. Leases (if applicable). Mortgagor shall not enter into any Lease without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld or delayed. Each such Lease shall be in form and substance satisfactory to the Mortgagee and shall include a provision confirming that the Lease is subordinate to the lien of this Agreement and consenting to the assignment provided for herein of the Lease to Mortgagee. Mortgagor shall furnish Mortgagee, upon the request of Mortgagee, with copies of each and every Lease and any other information relative to each such Lease and the tenant thereunder. Mortgagor will take all action as may be requested by Mortgagee in furtherance of the rights of Mortgagee hereunder, including, without limitation, using its best efforts in obtaining estoppel certificates and agreements (in form satisfactory to Mortgagee) from each tenant, subordinating the

Lease to the lien of this Agreement and consenting to the assignment of the Lease provided for herein, and taking all appropriate action to lease any portions of the Mortgaged Premises not occupied by Mortgagor.

4-16. Superior Mortgage. The Mortgagor does hereby covenant and agree to faithfully and fully comply with and abide by each and every term, covenant and condition of any superior mortgage or mortgages, if applicable, on the Mortgaged Premises. The Mortgagee is hereby expressly authorized, permitted and directed, in its sole discretion, and at its option, to advance all sums necessary to cure any default under any such mortgage. The Mortgagor further covenants and agrees not to modify, change, alter or extend any of the terms or conditions of any such prior mortgage, and not to request, accept or allow the disbursement hereafter of any advances, which are to be secured by any, such mortgage.

## ARTICLE 5 - MORTGAGOR'S USE OF COLLATERAL

Unless and until the occurrence of any event which is, or solely with the passage of time would be, an Event of Default hereunder, the Mortgagor shall be authorized to occupy, operate, manage, hold or otherwise use the Collateral in the ordinary and reasonable course of the Mortgagor's business and collect, when due, the Rental Payments, subject, however, to the terms and provisions hereof.

## ARTICLE 6 - EVENTS OF DEFAULT

Upon the occurrence of any one (1) or more of the following (hereinafter, the "Events of Default"), any and all Liabilities of the Mortgagor to the Mortgagee shall become immediately due and payable, without notice or demand, at the option of the Mortgagee. The occurrence of any such Event of Default shall also constitute, without notice or demand, a default under all other agreements between the Mortgagee and the Mortgagor or instruments and papers given the Mortgagee by the Mortgagor, whether now existing or hereafter arising.

6-1. The failure by the Mortgagor to pay when due, the payments due under the Note, or any amount then owing by the Mortgagor to the Mortgagee.

6-2. The failure by the Mortgagor to promptly, punctually and faithfully perform, discharge or comply with any Liability, and the continuance of such default for thirty (30) days following written notice from the Mortgagee.

6-3. The good faith determination by the Mortgagee that any financial information, representation or warranty now or hereafter provided or made by the Mortgagor to the Mortgagee, whether herein, or in any other document, instrument, agreement or paper, was not true or accurate in any material manner when given.

6-4. The occurrence of any event such that any indebtedness of the Mortgagor for borrowed money from any lender other than the Mortgagee has been accelerated such that the indebtedness of the Mortgagor to another lender other than the Mortgagee but secured by a mortgage on the Property may be accelerated, notwithstanding that such acceleration has not taken place.

6-5. The occurrence of any event of default under any agreement between the Mortgagee and the Mortgagor, or under any instrument or paper given the Mortgagee by the Mortgagor, whether such agreement, instrument or paper now exists or hereafter arises (notwithstanding that the Mortgagee may not have exercised its rights upon default under any such other agreement, instrument or paper) and the continuance of such default for twenty-one (21) days following written notice from the Mortgagee.

6-6. Any act by, against or relating to the Mortgagor, or its property or assets, which act constitutes the application for, consent to or sufferance of the appointment of a receiver, trustee or other person (pursuant to court action or otherwise) over all, or any part of, the Mortgagor's property; the granting of any trust mortgage or execution of an assignment for the benefit of the creditors of the Mortgagor, or the occurrence of any other voluntary or involuntary liquidation or extension of debt agreement for the Mortgagor, unless such involuntary petition is dismissed within thirty (30) days; the admission by the Mortgagor of its inability to pay its debts as they mature; adjudication of insolvency relative to the Mortgagor; the entry of an order for relief or similar order with respect to the Mortgagor in any proceeding pursuant to the Bankruptcy Reform Act of 1978 or any other federal statute dealing with bankruptcy (hereinafter, generally the "Bankruptcy Code"); the filing of any complaint, application or petition by or against the Mortgagor initiating any matter in which the Mortgagor is or may be granted any relief from its debts pursuant to the Bankruptcy Code or pursuant to any other insolvency statute or procedure; the calling or sufferance of a meeting of creditors of the Mortgagor; the meeting by the Mortgagor with a formal or informal creditors' committee; the offering by or entering into by the Mortgagor of any composition, extension or other arrangement seeking relief or extension of its debts; or the initiation of any other judicial or non-judicial proceeding or agreement by, against or including the Mortgagor which seeks or intends to accomplish a reorganization or arrangement with creditors.

6-7. The entry of any judgment against the Mortgagor, which judgment is not satisfied or appealed from (with execution or similar process stayed) within twenty-one (21) days of its entry.

6-8. The service of any process upon the Mortgagee seeking to attach by mesne or trustee process any funds of the Mortgagor on deposit with the Mortgagee and Mortgagor shall be entitled to not more than twenty-one (21) to have such proceedings dismissed.

6-9. The death, legal incapacity, termination of existence, dissolution, winding up or liquidation of the Mortgagor.

6-10. The sale, transfer, assignment or other disposition of any of the capital stock of any partnership, membership or beneficial interest of the Mortgagor, by the legal entity or individuals who have an ownership interest in the legal entity, or the sale, transfer, assignment, pledge, mortgage or other disposition or grant of any interest in all or any portion of the Collateral.

6-11. The occurrence of any of the events described in this Article with respect to any partner or beneficiary of the Mortgagor or any guarantor, endorser or surety to the Mortgagee of the Liabilities as if such person were the "Mortgagor" described therein.

6-12. The breach of the Statutory Condition contained herein, upon which breach, the Mortgagee shall have the Statutory Power of Sale.

**ARTICLE 7 - RIGHTS AND REMEDIES UPON DEFAULT**

7-1. Rights and Remedies Upon Default. Upon the occurrence of any Event of Default, or at any time thereafter while such default is not cured to the reasonable satisfaction of the Mortgagee, the Mortgagee shall have all the rights of a mortgagee and a secured party under the laws of the state of New Hampshire and/or Massachusetts, in addition to which the Mortgagee shall have all of the following rights and remedies:

(a) with or without taking possession, to collect any proceeds of the Collateral;

(b) to take possession of all or a portion of the Collateral;

(c) with or without taking possession of the Collateral, to sell, lease or otherwise dispose of any or all of the Collateral in its then condition or following such preparation or processing as the Mortgagee deems advisable;

(d) with or without taking possession of the Collateral, and without assuming the obligations of the Mortgagor thereunder, to exercise the rights of the Mortgagor under, to use, or to benefit from any of the easements, covenants, agreements and rights referred to in Section 3-3(c) hereof or any Leases;

(e) with or without taking possession of the Collateral and with or without bringing any action or proceeding, either directly, by agent or by the appointment of a receiver, manage, lease, sublease or operate the Collateral on such terms as the Mortgagee, in its sole discretion, deems proper or appropriate;

(f) to apply all or any portion of the Collateral, or the proceeds thereof, towards (but not necessarily in complete satisfaction of) the Liabilities; and

(g) to exercise the Statutory Power of Sale.

7-2. Sale or Other Disposition of Collateral. Any sale or other disposition of the Collateral may be at public or private sale, to the extent such private sale is authorized under the laws of the states of Massachusetts and/or New Hampshire, upon such terms and in such manner, as the Mortgagee deems advisable. The Mortgagee may conduct any such sale or other disposition of the Collateral upon the Mortgaged Premises, in which event the Mortgagee shall not be liable for any rent or charge for such use of the Mortgaged Premises. The Mortgagee may purchase the Collateral, or any portion of it, at any sale held under this Article. With respect to any Collateral to be sold pursuant to the UCC, the Mortgagee shall give the Mortgagor at least fifteen (15) days written notice of the date, time and place of any proposed public sale, or such additional notice as may be required under the laws of the states of Massachusetts and/or New Hampshire, and of the date after which any private sale or other disposition may be made. The Mortgagee may sell any of the Collateral as part of the Mortgaged Premises, or any portion or unit thereof, at the foreclosure sale or sales conducted pursuant hereto. The Mortgagor waives any right to require the marshaling of any of its assets in connection with any disposition conducted pursuant hereto. In the event all or part of the Collateral is included at any foreclosure sale conducted pursuant hereto, a single total price for the Collateral, or such part thereof as is sold, may be accepted by the Mortgagee with no obligation to distinguish between the application of such proceeds

amongst the property comprising the Collateral. If all or any portion of the Collateral is sold by the Mortgagee, the Mortgagor shall pay to the Mortgagee on demand an amount equal to three percent (3%) of the purchase price thereof in addition to the Liabilities and all Costs of Collection provided for herein.

7-3. Collection of Proceeds of Collateral. In connection with the exercise by the Mortgagee of the rights and remedies provided herein:

(a) The Mortgagor shall hold any proceeds and collections of any of the Collateral in trust for Mortgagee and shall not commingle such proceeds or collections with any other funds of the Mortgagor; and

(b) The Mortgagor shall deliver all such proceeds to the Mortgagee immediately upon the receipt thereof by the Mortgagor in the identical form received, but duly endorsed or assigned on behalf of the Mortgagor to the Mortgagee.

7-4. Use and Occupation of Collateral. In connection with the Mortgagee's exercise of the Mortgagee's rights after an Event of Default which is continuing under this Article, the Mortgagee may enter upon, occupy and use all or any part of the Collateral and may exclude the Mortgagor from the Mortgaged Premises or portion thereof as may have been so entered upon, occupied or used. The Mortgagee shall not be required to remove any of the Collateral from the Mortgaged Premises upon the Mortgagee's taking possession thereof, and may render any Collateral unusable to the Mortgagor. Further, the Mortgagee may make such alterations, renovations, repairs and replacements to the Collateral, as the Mortgagee, in its sole discretion, deems proper or appropriate.

7-5. Partial Sales. The Mortgagor agrees that, in case the Mortgagee in the exercise of the Power of Sale contained herein or in the exercise of any other rights hereunder given, elects to sell in parcels, said sales may be held from time to time and that the power shall not be exhausted until all of the Collateral not previously released shall have been sold, notwithstanding that the proceeds of such sales exceed, or may exceed, the Liabilities then secured thereby.

7-6. Assembly of Collateral. Upon the occurrence of any Event of Default, the Mortgagee may require the Mortgagor to assemble any personal property included in the Collateral and make it available to the Mortgagee, at the Mortgagor's sole risk and expense, at a place or places which are reasonably convenient to both the Mortgagee and Mortgagor.

7-7. Power of Attorney. Upon the occurrence of any Event of Default which continues without cure, Mortgagor hereby irrevocably constitutes and appoints Mortgagee as the Mortgagor's true and lawful attorney, to take any action with respect to the Collateral to preserve, protect or realize upon the Mortgagee's interest therein, each at the sole risk, cost and expense of the Mortgagor, but for the sole benefit of the Mortgagee. The rights and powers granted the Mortgagee by the within appointment include, but are not limited to, the right and power to: (i) prosecute, defend, compromise, settle or release any action relating to the Collateral; (ii) endorse the name of the Mortgagor in favor of the Mortgagee upon any and all checks or other items constituting remittances or proceeds of the Collateral; (iii) sign and endorse the name of the Mortgagor on, and to receive as secured party, any of the Collateral; (iv) sign and file or record on behalf of the Mortgagor any financing or other statement

in order to perfect or protect the Mortgagee's security interest; (v) enter into leases or subleases relative to all or a portion of the Mortgaged Premises; or (vi) manage, operate, maintain or repair the Mortgaged Premises. Mortgagee shall not be obligated to perform any of such acts or to exercise any of such powers, but if the Mortgagee elects so to perform or exercise, the Mortgagee shall not be accountable for more than it actually receives as a result of such exercise of power, and shall not be responsible to Mortgagor except for Mortgagee's willful misconduct, actual bad faith or gross negligence. All powers conferred upon Mortgagee by this Agreement, being coupled with an interest, shall be irrevocable until terminated by a written instrument executed by a duly authorized officer of the Mortgagee.

7-8. Rights and Remedies. The rights, remedies, powers, privileges and discretions of Mortgagee hereunder (hereinafter "Mortgagee's Rights and Remedies"), shall be cumulative and not exclusive of any rights or remedies which it would otherwise have. No delays or omissions by Mortgagee in exercising or enforcing any of Mortgagee's Rights and Remedies shall operate as or constitute a waiver thereof. No waiver by the Mortgagee of any default hereunder or under any other agreement shall operate as a waiver of any other default hereunder or under any other agreement. No single or partial exercise of Mortgagee's Rights or Remedies, and no other agreement or transaction, of whatever nature entered into between Mortgagee and Mortgagor at any time, whether before, during or after the date hereof, preclude any other or further exercise of Mortgagee's Rights and Remedies. No waiver or modification on Mortgagee's part on any one occasion shall be deemed a waiver on any subsequent occasion, nor shall it be deemed a continuing waiver. All of the Mortgagee's Rights and Remedies under this or any other agreement or transaction shall be cumulative, and not alternative or exclusive, and may be exercised by the Mortgagee at such time or times and in such order of preference as the Mortgagee, in its sole discretion, may determine.

## ARTICLE 8 - MISCELLANEOUS

8-1. Successors and Assigns. In the event the ownership of the Collateral, or any part thereof, becomes vested in a person other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal with such successor or successors in interest with reference to this Agreement and the Liabilities in the same manner as with Mortgagor, without in any way waiving the default occasioned by such transfer of ownership or in any way vitiating or discharging Mortgagor's liability hereunder or upon the Liabilities, and no compromise, settlement, release or sale of the Collateral, no forbearance on the part of the Mortgagee, and no alteration, amendment, cancellation, waiver or modification of any term or condition or extension of the time for payment of the Liabilities given by Mortgagee shall operate to release, discharge, modify, change or affect the original liability of the Mortgagor herein, either in whole or in part, notice of any action being waived.

8-2. Set Off. Except for tax escrow funds which are provided for in Section 4-8 herein, all deposits or other sums at any time credited by or due from the Mortgagee to the Mortgagor, and all cash, securities, instruments or other property of the Mortgagor in the possession of the Mortgagee (whether for safekeeping, or otherwise) shall at all times constitute security for the Liabilities, and may be applied or set off by the Mortgagee against the Liabilities at any time whether or not the Liabilities are then due or other collateral is then available to the Mortgagee.

8-3. Application of Proceeds. The proceeds of any collection, sale or disposition of the Collateral, or of any other payments received hereunder, shall be applied toward the Liabilities in such order and manner as the Mortgagee reasonably determines, in its sole discretion, any statute, custom or usage to the contrary notwithstanding. The Mortgagor shall remain liable to the Mortgagee for any deficiency remaining following such application.

8-4. Waiver.

(a) The Mortgagor WAIVES notice of demand, presentment, protest and all forms of demand and notice, both with respect to the Liabilities and the Collateral; and

(b) The Mortgagor, if entitled to it, WAIVES the right to notice and/or hearing prior to the exercise of any of the Mortgagee's Rights and Remedies.

8-5. Responsibility of Mortgagee. The Mortgagee shall not be liable for any loss sustained by the Mortgagor resulting from any action, omission or failure to act by the Mortgagee with respect to the exercise or enforcement of its rights under this Agreement or its relationship with the Mortgagor unless such loss is caused by the willful misconduct, actual bad faith or gross negligence of the Mortgagee. This Agreement and the Mortgagee's exercise of its rights hereunder shall not operate to place any responsibility upon the Mortgagee for the control, care, management or repair of the Collateral, nor shall it operate to place any responsibility upon the Mortgagee to perform the obligations of the Mortgagor under any Lease, or to make the Mortgagee responsible or liable for any waste committed on the Mortgaged Premises, and Mortgagor agrees to save, defend and indemnify Mortgagee from same, and any damages or defective condition of the Mortgaged Premises, or any negligence in the management, upkeep, repair or control of the Mortgaged Premises.

8-6. Indemnification. The Mortgagor shall indemnify, defend and hold the Mortgagee harmless of and from any claim brought or threatened against the Mortgagee by the Mortgagor, any guarantor or endorser of the Liabilities, or any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the Collateral, or on account of the Mortgagee's relationship with the Mortgagor or any other guarantor or endorser of the Liabilities (each of which may be defended, compromised, settled or pursued by the Mortgagee with counsel of the Mortgagee's selection, but at the expense of the Mortgagor). The within indemnification shall survive payment of the Liabilities and/or any termination, release or discharge executed by the Mortgagee in favor of the Mortgagor.

8-7. Binding on Successors. This Agreement shall be binding upon the Mortgagor and the Mortgagor's heirs, executors, administrators, representatives, successors and assigns and shall inure to the benefit of the Mortgagee and the Mortgagee's successors and assigns. This provision shall not in any way be deemed to be a waiver by the Mortgagee of any Event of Default provided for herein.

8-8. Severability. Any determination that any provision of this Agreement or any application thereof is invalid, illegal or unenforceable in any respect in any instance shall not affect the validity, legality and enforceability of such provision in any other instance, nor the validity, legality or enforceability of any other provision of this Agreement.

8-9. Consent. The Mortgagor may take any action herein prohibited, or omit to perform any act required to be performed by it, if the Mortgagor shall obtain the prior written consent by a duly authorized officer of the Mortgagee for each such action, or omission to action.

8-10. Payment of Costs. The Mortgagor shall pay on demand all Costs of Collection and all expenses of the Mortgagee in connection with the preparation, execution and delivery of this Agreement and of any other documents and agreements between the Mortgagor and the Mortgagee, including, without limitation, attorneys' reasonable fees and disbursements, and all expenses which the Mortgagee may hereafter incur in connection with the collection of the Liabilities or the protection or enforcement of any of the Mortgagee's rights against the Mortgagor, any Collateral, and any guarantor or endorser of the Liabilities. The Mortgagor authorizes the Mortgagee to pay all such expenses and to charge the same to any account of the Mortgagor with the Mortgagee.

8-11. Additional Advances. All amounts which the Mortgagee may advance under any Sections of this Agreement shall be repayable to the Mortgagee with interest at the highest rate charged relative to any of the Liabilities, on demand, shall be a Liability, and may be charged by the Mortgagee to any deposit account which the Mortgagor maintains with the Mortgagee.

8-12. Notice. All notices, demands and other communications made in respect to this Agreement shall be made to the following addresses (each of which may be changed upon seven (7) days written notice to all others) given by hand, by facsimile, or by certified mail, return receipt requested, as follows:

If to the Mortgagee:

Chestnut Hill Mortgage & Realty, Inc.
21A Highland Circle, Suite 200
Needham, MA 02494

If to the Mortgagor:

Bernard J. Laverty, Jr. and Patricia M. Laverty and Bernard J. Laverty, Jr., as Trustee and
SOS Realty LLC
with a principal address of
130 Pokanoket Lane
Marshfield, Massachusetts

8-13. Miscellaneous. All parties hereto, as well as Mortgagee, hereby expressly waive all rights to trial by jury, as to all issues, including any counterclaims, without exception, in any action or proceeding directly or indirectly relating hereto, or relating to any and all other loan documents executed in connection therewith.

8-14. Governing Law. This Agreement and all rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the laws of The Commonwealth of Massachusetts, with the exception that in the event of any type of foreclosure sale, the procedural laws of the state of Vermont may apply. The Mortgagor submits itself to the jurisdiction of the courts of

said Commonwealth for all purposes with respect to this Agreement and the Mortgagor's relationship with the Mortgagee.

8-15. Waiver of Trial by Jury. All parties hereto, as well as Mortgagee, hereby expressly waive all rights to trial by jury, as to all issues, including any counterclaims, without exception, in any action or proceeding directly or indirectly relating hereto, or relating to any and all other loan documents executed in connection therewith.

8-16. Junior Financing. Mortgagor does hereby acknowledge and understand that any junior financing will not be permitted without first obtaining the written consent of the Mortgagee. Failure to abide by this provision will be deemed to be an event of default.

8-17. Authority of Manager to Execute Mortgage. This shall confirm to the Mortgagee that the Manager executing this Mortgage and any other loan documents in connection with this loan arrangement has been duly authorized to execute said Mortgage along with any and all other loan documentation.

8-18. Authority of Trustee to Execute Mortgage. This shall confirm to the Mortgagee that the Trustee executing this Mortgage and any other loan documents in connection with this loan arrangement has been duly authorized to execute said Mortgage along with any and all other loan documentation.

*{Remainder of Page Intentionally Left Blank}*

IN WITNESS WHEREOF, the Mortgagor has executed this Agreement as a sealed instrument on the date first above written.

SOS Realty LLC,

By: ______________________
Bernard J. Laverty, Jr., its Manager
Hereunto duly authorized

B&S Realty Trust,

By: ______________________
Bernard J. Laverty, Trustee
Hereunto duly authorized

______________________
Bernard J. Laverty, Jr., individually

______________________
Patricia M. Laverty, individually

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss. July 14, 2005

On this 14th day of July 2005, before me, the undersigned notary public, personally appeared Bernard J. Laverty, Jr. and Patricia M. Laverty, Jr., and Bernard J. Laverty, Jr., as Trustee of the B&S Realty Trust, and Bernard J. Laverty, Jr., as Manager of SOS Realty LLC, who proved to me through satisfactory evidence of identification, which consisted of a Massachusetts drivers licenses to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it individually, and Bernard J. Laverty, Jr. signed it as Trustee and as Manager, duly authorized, as their free act and deed, voluntarily for its stated purpose.

______________________
Stuart Hartley Sojcher, Notary Public
My Commission Expires: 4-21-06

STUART HARTLEY SOJCHER
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 21, 2006

EXHIBIT A

DESCRIPTION OF LAND

A certain parcel of alnd with the improvements thereon situated on Rowe Street, being number 153, Roslindale, Boston, Suffolk County, Massachusetts.

Being shown as Lot 1 on a plan entitled "Subdivision of Plan made by W.C. Bates, Surveyors, February 27, 1906" duly recorded with the Suffolk County Registry of Deeds, Book 3203, Page 529 to which plan reference is hereby made for a more particular description, and containing 2,706 square feet of land according to said plan.

Said premises are now known as and numbered 153 Rowe Street, Roslindale, MA.

For title, see Deed recorded with said Deeds in Book 9384, Page 135.